IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 19-cv-00573

HUSSEIN ALTAWEEL,                    )
                                     )
            Plaintiff,               )
    v.                               )          **COMPLAINT**
                                     )          **JURY TRIAL DEMANDED**
LONGENT LLC,                         )
                                     )
            Defendant.               )

COMES NOW Plaintiff Hussein Altaweel ("Plaintiff"), complaining of Defendant Longent LLC ("Defendant"), alleges and says the following:

## JURISDICTION

1. Plaintiff's claims for discrimination on the basis of race, religion, and national origin, retaliation, and hostile work environment arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII").

2. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343.

3. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

4. This Honorable Court has personal jurisdiction over Defendant because Defendant conducts business in the State of North Carolina.

5. Costs and attorney's fees may be awarded pursuant to Title VII, 42 U.S.C. § 2000e-5(k); and Fed. R. Civ. P. 54.

6. Venue is proper pursuant to 28 U.S.C. § 1931 as to Defendant because Defendant conducts business in this judicial district and this district is where a substantial part of the events giving rise to the claims occurred.

1

## PARTIES

7. Plaintiff is a citizen of the United States of Iraqi national origin and a resident of Raleigh, North Carolina.

8. At all times relevant to this Complaint, Plaintiff was a practicing Muslim.

9. Plaintiff moved to the United States as a refugee from Iraq in August 2013, having volunteered as a translator for the U.S. Marine Corps during Operation Iraqi Freedom.

10. Plaintiff became naturalized U.S. citizen in 2019.

11. At all times relevant to this Complaint, Plaintiff was an "employee" as that term is defined by Title VII.

12. Defendant is a North Carolina company with its principal place of business in Raleigh, North Carolina.

13. Defendant regularly and systematically conducts business in the State of North Carolina.

14. Defendant employed more than 15 employees for each working day in more than 20 weeks during the preceding year.

15. At all times relevant to this Complaint, Defendant was an "employer" as the term is defined in Title VII.

## ADMINISTRATIVE HISTORY

16. Plaintiff has exhausted all administrative remedies available to him.

17. On May 17, 2019, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

18. The EEOC issued a "Dismissal and Notice of Rights" on September 20, 2019. A copy of the September 20, 2019 Dismissal and Notice of Rights letter is attached hereto as Exhibit A.

2

19. This Complaint is being timely filed within 90 days from the date the Plaintiff received the Dismissal and Notice of Rights from the EEOC.

## FACTS

20. On or about August 17, 2015, Defendant hired Plaintiff to serve as a Project Manager. Plaintiff worked continuously for Defendant until May 10, 2019.

### *Plaintiff's Compensation Disparity*

21. At all times relevant to this Complaint, Plaintiff's salary and compensation were determined by Defendant's Chief Executive Officer, Rick Youngbar ("Youngbar").

22. At all times relevant to this Complaint, Plaintiff's salary and compensation were lower than similarly situated employees who were of a different religious faith and national origin than Plaintiff.

23. At all times relevant between 2015 and 2016, Plaintiff was exceeding all job requirements and received positive performance reviews.

24. Between 2015 and 2016, Defendant did not award Plaintiff any increase in salary or compensation.

25. Between 2015 and 2016, Defendant awarded pay raises to similarly situated employees of Defendant who were of a different religious faith and national origin than Plaintiff.

26. At all times relevant to this Complaint, Plaintiff was more qualified for the position of Project Manager than similarly situated employees of Defendant who were of a different religious faith and national origin than Plaintiff.

27. Defendant's unequal treatment of Plaintiff's salary and other compensation was because of Plaintiff's religion and/or national origin.

3

*Defendant Denies Advancement to Plaintiff*

28. Throughout his employment with Defendant, Plaintiff repeatedly sought career advancement with Defendant.

29. On or around July 2017, Craft encouraged Plaintiff to apply to be Defendant's Operations Director.

30. On or around July 2017, Plaintiff applied for the position of Operations Director.

31. Defendant did not interview Plaintiff for the Operations Director position.

32. Instead, Defendant offered the Operations Director position to a less qualified, non-Muslim, natural born citizen of the United States.

33. On or around November 2017, Plaintiff sought a promotion to become Defendant's Area Manager for Tennessee.

34. Plaintiff communicated his interest in the Area Manager position to his immediate supervisor, Travis Craft ("Craft").

35. Craft responded to Plaintiff's interest in the Area Manager position by saying that Plaintiff deserved such a promotion.

36. Defendant, however, did not interview Plaintiff for the Area Manager position.

37. Defendant instead hired a less qualified, non-Muslim, natural born citizen of the United States who Plaintiff had trained.

38. On or about July 17, 2018, Youngbar communicated to Plaintiff that Defendant was interviewing candidates for a new Chief Operating Officer.

39. At that time, Plaintiff communicated his interest in the Chief Operating Officer position to Youngbar.

40. Defendant did not interview Plaintiff for the Chief Operating Officer position.

4

41. Defendant did not hire Plaintiff to be Defendant's Chief Operating Officer.

*Youngbar Jokes About Plaintiff's Religious Dietary Restrictions*

42. At some time in or around July 2018, Defendant provided pizza to some of its employees, including Plaintiff.

43. Nearly all of the pizza provided to Plaintiff at the July 2018 event was topped with pork products, a food that is prohibited by Plaintiff's religious faith.

44. At that same party, Plaintiff told Youngbar that Muslims could not eat pork.

45. A few weeks after the pizza party, at some time in or around August 2018, Plaintiff announced to his co-workers that he was going to go out for lunch. Youngbar responded by saying "I have some lunch here… It's pork, it's good, you should try it." Plaintiff again asked Youngbar to consider Plaintiff's religious beliefs when discussing food options.

*Defendant Disciplines Plaintiff for Seeking Accommodation for Religious Holiday*

46. Prior to July 2018, all of Plaintiff's requests for paid time-off were reviewed and evaluated by Craft.

47. On or about July 1, 2018, Craft resigned his employment with Defendant and review and evaluation of Plaintiff's paid time-off was subsequently done by Youngbar.

48. At some time prior to August 7, 2018, Plaintiff submitted a request directly to Youngbar for two days of paid time-off (August 23rd and 24th) from Defendant to celebrate Eid al-Adha with his family.

49. Previously, Plaintiff had submitted requests for paid time-off to Craft to observe Islamic holidays. Craft had approved each of those requests promptly and in advance of the holiday.

5

50. The employee handbook in place at the time of Plaintiff's request provided that it "will allow employees to use Paid Time Off to accommodate their [religious observance] needs… This leave must be requested through their Manager two weeks prior to the event."

51. At the time of Plaintiff's August 2018 request, he had accumulated enough paid time-off for the request.

52. Plaintiff's request was made in compliance with the timeliness requirements established in Defendant's employee handbook.

53. Eid al-Adha is an Islamic holiday celebrating Abraham's willingness to sacrifice Ishmael. The exact dates for Eid al-Adha depend on the phases of the moon and its exact dates vary each year.

54. Plaintiff requested the paid time-off as soon as the exact dates of Eid al-Adha were determined.

55. Defendant did not accept or deny Plaintiff's request for paid time-off prior to August 24, 2018.

56. Defendant's failure to respond to Plaintiff's request for paid time-off for Eid al-Adha was different than Plaintiff's other requests for paid time-off, which had always been immediately granted or denied by Craft.

57. Instead, at some time between August 7 and August 24, Youngbar approached Plaintiff and told him that "we have our own holidays in this country" and "aren't those holidays enough for you?"  Youngbar also told Plaintiff at that time that "you need to think about your career."

58. On or about November 30, 2018, Defendant instituted an "Employee Improvement Action Form" ("Action Form") citing Plaintiff for "not request[ing] PTO ahead of time for planned events."

59. The Action Form was pretext for Defendant and Youngbar's unlawful discrimination based upon Plaintiff's religion and/or national origin as similarly situated employees who were non-Muslim and/or natural born American citizens were not cited for identical behavior.

60. Defendant's November 30, 2018 Employee Action Form was the first disciplinary action taken against Plaintiff at any time during Plaintiff's career, let alone his employment with Defendant.

61. Pursuant to the employee handbook, the November 30, 2018 Employee Improvement Action Form remained valid for six months.

62. Defendant's employee handbook provided that "disciplinary action usually occurs in a progressive sequence: verbal warning, written warning, suspension, and discharge."

63. Aside from the hostility expressed by Youngbar regarding Eid al-Adha, Plaintiff did not receive any formal verbal warning from Defendant in advance of the November 30, 2018 Employee Action Form.

64. Defendant's November 30, 2018 Employee Improvement Action Form was pretext for Defendant's retaliation for Plaintiff's request for paid time-off to celebrate Eid al-Adha.

65. Upon information and belief, Defendant regularly and promptly approves employee requests for paid time-off to observe Christian and/or Jewish holidays.

66. In or around December 2018, Plaintiff complained to Defendant and Youngbar that Plaintiff felt that, because non-Muslim natural born citizens of the United States had not been

subjected to the same standards, the Employee Improvement Action Form was done solely because of Plaintiff's religion and/or national origin.

*Defendant Fires Plaintiff*

67. Plaintiff was still subject to the Defendant's November 30, 2018 Employee Improvement Action Form on May 10, 2019.

68. On May 6, 2019, Plaintiff alerted Defendant that his daughter had gotten sick and required hospitalization. He subsequently requested paid time-off on the mornings of May 7th and 8th in order to care for his daughter.

69. Defendant's employee's handbook provided that the paid time-off request deadlines were not applicable "in unforeseeable cases, such as sudden illness…"

70. On May 10, 2019, citing the November 30, 2018 Employee Improvement Action Form, Defendant terminated Plaintiff's employment.

71. The termination of Plaintiff's employment occurred during the first week of Ramadan, which began on May 6, 2019.

## COUNT I – DISCRIMINATION IN VIOLATION OF TITLE VII

72. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

73. Plaintiff was discriminated against on the basis of his religion and/or national origin.

74. Plaintiff met Defendant's legitimate work expectations.

75. Similarly situated employees who were non-Muslims or natural born citizens of the United States were treated more favorably in the terms, privileges, and conditions of their employment with Defendant.

8

76. Defendant's stated reasons for the more favorable treatment of non-Muslim natural born citizens of the United States were pre-textual.

77. Defendant subjected Plaintiff to discipline and ultimately terminated his employment for exercising his sincerely held religious belief.

78. Defendant failed to provide a reasonable accommodation to Plaintiff that would have enabled Plaintiff to adhere to his sincerely held religious beliefs and practices.

79. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

80. Defendant's actions were intentional, willful, and done in reckless disregard of Plaintiff's rights as protected by Title VII.

81. Accordingly, Plaintiff is entitled to recover punitive damages from Defendant.

82. Plaintiff is entitled to recover his reasonable attorneys' fees and costs.

## COUNT II – RETALIATION

83. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

84. Title VII prohibits retaliation against employees who oppose discrimination prohibited by the statute.

85. Plaintiff engaged in protected activity within the meaning of Title VII by requesting accommodation for his religious practice and complaining about the discriminatory Employee Improvement Form.

86. Plaintiff was punished and terminated from his position with Defendant in retaliation for his prior protected activity in resisting the discriminatory conduct maintained and permitted by the Defendant.

87. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

88. Defendant's actions were intentional, willful, and done in reckless disregard of Plaintiff's rights as protected by Title VII.

89. Accordingly, Plaintiff is entitled to recover punitive damages from Defendant.

90. Plaintiff is entitled to recover his reasonable attorneys' fees and costs.

## COUNT III – HOSTILE WORK ENVIRONMENT

91. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

92. Defendant had an affirmative duty to maintain a workplace that was free of harassment based on Plaintiff's religion and national origin.

93. As alleged above, Defendant's discriminatory conduct towards Plaintiff's sincerely held religious beliefs altered the terms of Plaintiff's employment with Defendant and, accordingly, constituted a hostile work environment for Plaintiff.

94. As a direct and proximate result of the hostile work environment created, nurtured, and permitted by Defendant, Plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

95. Defendant's actions were intentional, willful, and done in reckless disregard of Plaintiff's rights as protected by Title VII.

96. Accordingly, Plaintiff is entitled to recover punitive damages from Defendant.

97. Plaintiff is entitled to recover his reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby requests the following relief:

1. Payment for all economic damages in an amount to be proved at trial;

2. Payment for all non-economic damages, including emotional harm, in an amount to be proved at trial;

3. Payment for punitive damages in an amount to be determined by the jury;

4. Payment of reasonable attorneys' fees and costs;

5. Recovery for pre-judgment and post-judgment interest on all amounts awarded herein; and

6. All other relief which this Honorable Court deems just and proper.

This the 19th day of December, 2019.

OSBORN GAMBALE BECKLEY & BUDD PLLC

BY: _____

JOSEPH D. BUDD
N.C. Bar No. 44263
410 North Boylan Ave.
Raleigh, North Carolina 27603
joe@counselcarolina.com
919.373.6422
Facsimile: 919.578.3733

11