IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 5:19-CV-573-FL

HUSSEIN ALTAWEEL,                          )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )               ORDER
                                           )
LONGENT, LLC and RICKY ANTHONY             )
YOUNGBAR,                                  )
                                           )
                    Defendants.            )

        This matter is before the court on defendants' motion for summary judgment (DE 42)

pursuant to Federal Rule of Civil Procedure 56 and plaintiff's motion to strike (DE 46) pursuant

to Federal Rule of Civil Procedure 37(c)(1).  The motions have been briefed fully, and the issues

raised are ripe for ruling.  For the reasons that follow, defendants' motion is granted and plaintiff's

motion is denied.[1]

## STATEMENT OF THE CASE

        Plaintiff commenced this action against defendant Longent, LLC ("Longent"), plaintiff's

former employer, December 19, 2019, asserting claims of discrimination, retaliation, and hostile

work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

("Title VII").  On March 6, 2020, plaintiff amended his complaint as a matter of course to add his

former supervisor, Ricky Anthony Youngbar ("Youngbar"), as defendant and certain state law

---

[1]        On March 30, 2022, the court entered order denying plaintiff's motion for summary judgment on plaintiff's
Title VII discrimination claim premised upon a failure to accommodate his religious beliefs (DE 38), with mention in
that order the court's reasons separately would follow.  This opinion also memorializes reasons for that earlier denial.

claims. Plaintiff dismissed by stipulation entered July 1, 2021, his state law claims for emotional distress, and the court, in order entered August 24, 2021, dismissed plaintiff's Title VII claims against defendant Youngbar, allowing state law claims to proceed.

Following a period of discovery, on June 4, 2021, defendants filed the instant motion for summary judgment directed against all of plaintiff's claims with reliance upon: 1) depositions of plaintiff, defendant Youngbar, and defendant Longent's employees, Diane Beekman ("Beekman") and Travis Craft ("Craft"); 2) affidavit of defendant Youngbar; and 3) written discovery responses.

In his defense of motion, plaintiff relies upon the deposition testimony of record together with the following evidentiary materials: 1) deposition of Adam Wojcik ("Wojcik"), plaintiff's former coworker; 2) Wojcik's 2018 performance evaluation; 3) emails sent by Wojcik regarding work schedules; 4) additional written discovery responses; 5) affidavit of Jason St. Jean ("St. Jean"), plaintiff's former coworker; 6) documentation regarding requests for paid time off; 7) emails between plaintiff and defendant Youngbar; and 8) a spreadsheet listing the salaries of defendant Longent's project managers. Additionally, plaintiff seeks to strike portions of defendant Youngbar's affidavit and an exhibit thereto, with reference to Youngbar's deposition testimony his later affidavit assertedly contradicts, and discovery requests purportedly encompassing the challenged exhibit.

## STATEMENT OF FACTS

The undisputed facts, viewed in the light most favorable to plaintiff, may be summarized as follows.[2] Defendant Longent is a company of 40 or fewer employees that "designs, installs, commissions, and maintains wireless systems . . . . provid[ing] coverage and capacity for wireless

---

[2] Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in the parties' statements of facts, or portions of such paragraphs, where not "specifically controverted by a correspondingly numbered paragraph in the opposing statement."

service providers such as Verizon and AT&T within facilities and across campus environments."
(Def. Stmt. (DE 43) ¶¶ 2, 3).[3]  Defendant Youngbar is owner and chief executive officer of
defendant Longent.  (Id. ¶ 1).

Plaintiff, a practicing Muslim, is a United States citizen who immigrated from Iraq in 2013.
(Id. ¶¶ 7, 29).  Defendant Longent hired plaintiff as a project manager on August 17, 2015.  (Id. ¶
8).  Plaintiff's starting salary was $80,000 which, though more than plaintiff was making at his
previous position, was less than plaintiff expected to earn.  (Altaweel Dep. (DE 44-5) at 10).  It
was also $10,000 less than the average project manager's starting salary.  (Project Manager Salary
Table (DE 49-15)).  According to plaintiff, defendant Youngbar made assurances of the potential
for future promotions and advances, indicating that plaintiff would be "area manager for the
Carolinas and potentially more."  (Altaweel Dep. (DE 44-5) at 10).  Plaintiff alleges these promises
were reflective of commentary on the potential for advancement regularly made to defendant
Longent employees, particularly foreign nationals.  (Craft Dep. (DE 44-6) at 4).  According to
Craft, plaintiff's first supervisor and chief operating officer:

> [E]specially with foreign nationals, they had engineering backgrounds . . . but they
> were hired in as installation people, and there was a kind of a – there was – I don't
> know; it's a – I'm thinking of a – you know, like an incentive that, hey, you know,
> we also have those roles and maybe you can move into one of the engineering roles
> once you spend your time as a technician . . . . It's not an assurance or a promise.
> It's just a statement of fact.

(Id.).

Plaintiff received positive performance reviews over the course of his first 18 months with
Longent but did not receive any raises, which according to plaintiff improperly were delayed.

---

[3]  Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

(Def. Stmt. (DE 43) ¶¶ 14, 15; Altaweel Dep. (DE 44-5) at 12). However, following that initial period plaintiff in fact began receiving raises. (Def. Stmt. (DE 43) ¶ 15).

Plaintiff became friends with Craft outside of work, both regularly assisting with home repairs and picking up children from school. (Id. ¶¶ 16, 17). During plaintiff's time reporting to him, Craft consistently rated plaintiff highly on his performance reviews. (Id. ¶ 20).

All employees at defendant Longent are eligible for paid time off. (Id. ¶ 5). However, defendant Longent has a policy of requiring preapproval for requests for planned vacation and time off from work so that it may prepare for and backfill positions while the employee is off duty. (Id.). "Craft did not comply with [d]efendant Longent's policies regarding the timing of his [paid time off] requests." (Pl. Stmt. (DE 48) ¶ 21). "In July 2018 [defendant] Youngbar discussed these issues with Craft," and "[u]ltimately it was decided that Craft would be better off leaving [defendant] Longent and he resigned in July 2018." (Def. Stmt. (DE 43) ¶ 23). When Craft resigned, plaintiff contacted defendant Youngbar by email, expressing his interest in taking on Craft's role. (Id. ¶ 24). Defendant Longent did not, however, fill the role of chief operating officer and defendant Youngbar became plaintiff's direct supervisor. (Id. ¶ 25).

Sometime in August 2018, plaintiff made verbal request for leave for August 23, 2018, and August 24, 2018, to celebrate Eid al-Adha, a Muslim holiday. (Id. ¶ 29). Plaintiff did not submit a written request for August 23, 2018, but his request for leave August 24, 2018, was reflected in defendant Longent's records as having been made on August 21, 2018. (Id. ¶¶ 32, 33; Pl. Stmt. (DE 48) ¶ 33). According to plaintiff, defendant Youngbar responded to plaintiff's request by mocking the idea of a holiday based on the lunar calendar, asking "what if it's cloudy?" and stating, "we have holidays in this country, and those holidays aren't enough for you?" (Altaweel Dep.

(DE 40-6) at 6-7). Plaintiff's request for leave August 24, 2018, ultimately was approved August 27, 2018. (Def. Stmt. (DE 43) ¶ 31; Pl. Stmt. (DE 48) ¶ 31).

Plaintiff alleges that earlier in August 2018 defendant Youngbar offered to share some of his pork-based lunch with plaintiff, despite being on notice of plaintiff's religiously-based dietary restrictions. (Altaweel Dep. (44-5) at 5). When plaintiff responded, "let me guess . . . it's pork," defendant Youngbar confirmed that it was and stressed that it tasted good, and plaintiff should try it. (Id.). Around July of 2018, defendant Youngbar additionally offered plaintiff pizza containing pork. (Id. at 6).

Plaintiff also contends defendant Youngbar, on a date uncertain, commented that the government should not provide food stamps and health benefits to non-Americans. (Altaweel Dep. (DE 49-7) at 5). Further, when candidates with "background[s]" or "profile[s]" similar to plaintiff's were considered for employment, plaintiff alleges defendant Youngbar would "make comments in a sense that such people pretty much are not qualified other than doing, you know, the leg work or field work." (Id. at 6). Similarly, Craft had a "general sense" that defendant Youngbar had made racist comments, including once in 2004 when Craft and defendant Youngbar drove in a car with an African American employee and defendant Youngbar stated he was embarrassed by the way that employee was behaving. (Craft Dep. (DE 49-2) at 49-50). Additionally, during a lunch with Wojcik, plaintiff's coworker, Wojcik responded he "could see that" when plaintiff stated he believed defendant Youngbar to be racist. (Wojcik Dep. (DE 49-4) at 93).

Defendant Youngbar believed plaintiff "had problems getting to work on time" and "submitting [requests for personal time off] on time." (Youngbar Dep. (DE 49-3) at 154, 159; Pl.

Stmt. (DE 48) ¶ 21).  On November 30, 2018, he placed plaintiff on a performance improvement

plan.  (Pl. Stmt. (DE 48) ¶ 35).  The improvement plan stated that plaintiff:

> Does not report to work during the agreed upon work hours. Does not request [paid
> time off] ahead of time for planned events. Seldom submits [paid time off] requests
> for last minute time missed. Has not shown commitment to managing projects
> according to a documented timeline. Does not consistently use project
> documentation tools such as Insightly, as required.

(Def. Stmt. (DE 43) ¶ 36).  According to plaintiff, he complained that the plan was discriminatory

on more than one occasion.  (Altaweel Dep. (DE 44-5) at 14-15).  Pursuant to the plan, plaintiff

met with defendant Youngbar on a weekly basis, meetings that plaintiff surreptitiously recorded.

(Def. Stmt. (DE 43) ¶ 37).  None of those recordings contain discriminatory statements by

defendant Youngbar.  (Id. ¶ 38; Pl. Stmt. (DE 48) ¶ 38).

On December 21, 2018, defendant Youngbar conducted an annual review of plaintiff.

(Def. Stmt. (DE 43) ¶ 39).  Defendant Youngbar rated plaintiff lower than other project managers,

but overall gave him a 3.13, corresponding with a "satisfactory" performance rating.  (Id. ¶ 43;

Youngbar Dep. (DE 44-2) at 77-78).  He rated plaintiff at the lowest level for three out of the four

categories within the "work ethic" behavior element.  (Youngbar Dep. (DE 44-2) at 77-78).

Plaintiff's recordings reflect defendant Youngbar informing plaintiff that his performance

remained unsatisfactory.  (Def. Stmt. (DE 43) ¶ 39).  Plaintiff ultimately was terminated May 10,

2019, after having been absent from work for two days to spend time with his daughter, then in

the hospital.  (Id. ¶ 56).

**COURT'S DISCUSSION**

A.    Motion to Strike

At summary judgment, if an affidavit contradicts the affiant's prior deposition testimony,

the court may disregard the affidavit.  In re Family Dollar FLSA Litig., 637 F.3d 508, 512-13 (4th

Cir. 2011).[4]  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. at 513.  "[For a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984).

Notably, however, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Okoli v. City of Baltimore, 648 F.3d 216, 231 (4th Cir. 2011).  Thus, courts have limited application of the sham affidavit rule at the summary judgment stage "to situations involving flat contradictions of material fact." United States EEOC v. Ecology Servs., 447 F. Supp. 3d 420, 441 (D. Md. 2020); see Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 n.7 (4th Cir. 2001) (affirming the principal that the rule applies only where there is a "bona fide inconsistency" between two differing versions of an individual's testimony).  Where such flat contradictions exist, the proper remedy is to strike the later-given testimony.  See Family Dollar, 637 F.3d at 512-13.

Defendant Youngbar testified at his deposition that plaintiff requested to take a day off to celebrate the Eid al-Adha holiday on August 27, 2018, three days after he was absent from work. (Youngbar Dep. (DE 47-3) at 5 ("I was never given the opportunity to approve it because he requested it after he took the time off.")).  Defendants rely in support of their motion upon an affidavit by Youngbar in which he testifies that plaintiff requested the day off August 21, 2018, three days prior to the holiday, and defendant Youngbar did not approve the request until August 27, 2018, as he was on vacation at the time it was made.  (Youngbar Aff. (DE 44-4) ¶¶ 16-22).

---

[4]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

7

Plaintiff asserts the alleged inconsistencies amount to a contradiction and thus lines 16 through 22 of the affidavit should be struck.

Review of the deposition testimony, however, reveals that defendant Youngbar expressed uncertainty as to the exact date plaintiff requested to take the holiday, providing that the information available to him was incomplete. (Youngbar Dep. (DE 55-1) at 9 ("I don't have the information from it right now. I can't remember every single date, so I don't know.")). Indeed, he expressly indicated that there may be a need for further discovery. (Id. at 10 ("There may be other discovery or emails that correlated to this. This did sound really familiar.")). Thus, rather than flatly contradicting his deposition, defendant Youngbar's later affidavit is fairly understood as filling information gaps his earlier testimony acknowledged existed.

Further, to the extent the affidavit conflicts with some of the more general statements defendant Youngbar made during his deposition, it is supported in relevant part by other evidence in the record. (See, e.g., DE 44-4 at 9-12 (airline ticket), 15 (rental car), 17-18 (hotel room)). Thus, concern that the affidavit proffers "sham" issues of facts is greatly alleviated. See Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 43-44 (2d Cir. 2000) ("[A] party's deposition testimony as to a given fact does not foreclose a trial or an evidentiary hearing where that testimony is contradicted by evidence other than the deponent's subsequent affidavit, for when such other evidence is available, the concern that the proffered issue of fact is a mere 'sham' is alleviated."); Baer v. Chase, 392 F.3d 609, 625 (3d Cir. 2004) ("When there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit."); Button v. Dakota Minn. & E. R.R. Corp., 963 F.3d 824, 831 (8th Cir. 2020) (affidavit need not be disregarded when it mirrors other evidence that already establishes a fact dispute).

Indeed, plaintiff's concern does not appear to be that the affidavit introduces sham issues of fact, but rather that defendant Youngbar is not credible:

8

> Plaintiff agrees that [d]efendant Youngbar's deposition testimony does not accord with the documentary record and other testimony in the case. Indeed, it is an important premise of [p]laintiff's claims that [d]efendant Youngbar is not credible, and everything he says on the subject of [p]laintiff's request for religious leave is a made–up pretext for unlawful bias. Defendant Youngbar's Affidavit is simply more of the same.

(Pl. Mem. (DE 47) at 4; see Pl. Stmt. (DE 48) ¶ 33 ("[I]t appears that Defendant Youngbar was on vacation between August 21, 2018 and August 26, 2018.")). Such an issue of credibility is not a basis for striking the affidavit, but rather is an issue that may be examined in determining whether there is a genuine issue of fact precluding summary judgment. Okoli, 648 F.3d at 231.

In sum, based on the foregoing, plaintiff's motion to strike is denied.[5]

B.    Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party then must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is

---

[5]    Plaintiff additionally moves to strike Exhibit A to defendant Youngbar's affidavit, which comprises a two-page email from Diane Beekman to defendant Youngbar's wife. (See Youngbar Aff. (DE 44-4) at 13-14). As the court's analysis does not rely upon the contested email, this part of plaintiff's motion to strike is denied as moot.

"material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2.     Analysis

a.     Discrimination in Violation of Title VII

Plaintiff asserts defendant Longent discriminated against him on the basis of his religion and national origin in violation of Title VII. 42 U.S.C. § 2000e–2. "Courts have recognized that

employees may utilize two theories in asserting religious discrimination claims." <u>Chalmers v. Tulon Co. of Richmond</u>, 101 F.3d 1012, 1017 (4th Cir. 1996). "These theories are denominated as the 'disparate treatment' and 'failure to accommodate' theories." <u>Id.</u>

Turning first to the disparate treatment theory, when a plaintiff's Title VII claim is challenged on summary judgment, he may "avert summary judgment through [one of] two avenues of proof." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 318 (4th Cir. 2005). A plaintiff may present "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as . . . [religion or national origin] motivated the employer's adverse employment decision." <u>Id.</u> Alternatively, a plaintiff may use the well-known "burden-shifting" proof structure. <u>Id.</u>; <u>see generally</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Here, plaintiff relies upon asserted direct evidence in addition to relying on the burden-shifting framework.

A threshold issue under either avenue of proof, however, is whether the alleged employment actions of which plaintiff complains qualify as adverse employment actions. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." <u>James v. Booz-Allen & Hamilton, Inc.</u>, 368 F.3d 371, 375 (4th Cir. 2004). "Conduct short of 'ultimate employment decisions' can constitute adverse employment action." <u>Id.</u> at 375-76. However, "dislike of or disagreement with an employer's decisions does not invariably make those decisions ones that adversely affected some aspect of employment." <u>Adams v. Anne Arundel Cty. Pub. Sch.</u>, 789 F.3d 422, 431 (4th Cir. 2015). Rather, to be actionable, a plaintiff must "link such matters . . . to some material change in the conditions of his employment." <u>Id.</u>

Plaintiff points to two alleged adverse employment actions: 1) issuance of an employee improvement action form; and 2) his termination. Termination is clearly a form of adverse employment action. Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122-23 (4th Cir. 2021). Plaintiff, however, fails to link the issuance of his employee improvement action form with a material change in the conditions of his employment. See Melendez v. Bd. of Educ. for Montgomery Cty., 711 F. App'x 685, 688 (4th Cir. 2017) (employee's placement into a performance improvement plan did not constitute an adverse action). Indeed, the only change he identifies in relation to the plan is that he was required to attend a weekly meeting with defendant Youngbar to track his progress. Further, while the improvement plan was in response to alleged performance issues, issues that plaintiff contests, that impetus alone does not elevate the plan to an adverse employment action. Adams, 789 F.3d at 431 ("[R]eprimands and poor performance evaluations . . . . are much less likely to involve adverse employment actions than the transfers, discharges, or failures to promote whose impact on the terms and conditions of employment is immediate and apparent."). Thus, the relevant inquiry here is whether plaintiff's religion or national original motivated defendant Longent's decision to terminate him. It is not whether it motivated defendant Longent to place him on an improvement plan.

Looking to the first avenue of proof, for a plaintiff to survive summary judgment using direct evidence of discrimination he "must produce direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999), overruled on other grounds by Desert Palace v. Costa, 539 U.S. 90 (2003). Such evidence includes "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. "Derogatory remarks may in some instances constitute

direct evidence of discrimination." Id. at 608. However, "in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010); see Brinkley, 180 F.3d at 608 ("[U]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.").

Here, plaintiff alleges that when he requested time off to celebrate Eid al-Adha, defendant Youngbar responded by mocking the idea of a holiday based on the lunar calendar, asking "what if it's cloudy?" and stating, "we have holidays in this country, and those holidays aren't enough for you?" (Altaweel Dep. (DE 40-6) at 6-7. Those comments were made in the weeks following defendant Youngbar allegedly offering plaintiff pork products, in one instance stating that it tasted good, and plaintiff should try it. (Altaweel Dep. (44-5) at 5-6).

Plaintiff also points to testimony by Craft that he had a "general sense" that defendant Youngbar had made racist comments, referring specifically to an instance in 2004 when Craft and defendant Youngbar had been in a car with an African American employee. (Craft Dep. (DE 49-2) at 49). Craft asserts defendant Youngbar stated he was embarrassed by the way that employee was behaving. (Id. at 50). Finally, during a lunch with plaintiff's coworker, Wojcik, which plaintiff recorded, Wojcik responded he "could see that" when plaintiff stated he believed defendant Youngbar to be racist. (Wojcik Dep. (DE 49-4) at 93).

Plaintiff fails to establish a link between these alleged comments by defendant Youngbar, the most recent having been made in August of 2018, and his termination nine months later, on May 10, 2019. Indeed, communications and other evidence in the record specifically pertaining to that interim period, including numerous conversations surreptitiously recorded by plaintiff, are devoid of derogatory comments. Without a clear nexus between defendant Youngbar's alleged

remarks and plaintiff's termination, their relevance is "substantially reduced." Merritt, 601 F.3d at 300; see also Brinkley, 180 F.3d at 608 ("Title VII was not designed to create a federal remedy for all offensive language . . . in the workplace."). Thus, plaintiff's direct evidence is insufficient independently to support a claim for discrimination.

Turning, then, to the McDonnell Douglas framework, plaintiff first must establish a prima facie case of discrimination. Specifically, plaintiff must adduce evidence that 1) he is a member of a protected class; 2) he was performing satisfactorily; 3) he suffered an adverse employment action; 4) under circumstances giving rise to an inference of discrimination. McDonnell Douglas Corp., 411 U.S. at 802; see Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989).

In determining whether an employee was performing satisfactorily, it is the perception of the decisionmaker that is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Likewise, testimony of coworkers that plaintiff's work met expectations is insufficient to create a genuine issue of material fact. Id. For the court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998). "[I]t is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Id.

"[W]here application of the qualification or expectation element of the prima facie case seems to preclude an otherwise meritorious claim, the plaintiff is free to demonstrate that the employer's qualifications or expectations are not, in fact, 'legitimate.'" Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 517 (4th Cir. 2006). The plaintiff may "present evidence reasonably calling into question the honesty of his employer's belief" that he was not meeting expectations. DeJarnette, 133 F.3d at 299. For example, a plaintiff may show that an employer's evaluation

"could be discredited . . . as inconsistent and contradictory." <u>Jacobs v. N.C. Admin. Office of the Courts</u>, 780 F.3d 562, 575 (4th Cir. 2015). Alternatively, a plaintiff might introduce evidence indicating the expectations were a "sham designed to hide the employer's discriminatory purpose." <u>Warch</u>, 435 F.3d at 518.

In this case, it is undisputed that defendant Youngbar "believed [plaintiff] . . . 'had problems getting to work on time' and had 'problems submitting [his paid time off requests] ahead of time.'" (Pl. Stmt. (DE 48) ¶ 21 (quoting Youngbar Dep. (DE 49-3) 154, 159)). Indeed, in his final performance evaluation with defendant Longent, defendant Youngbar gave plaintiff the lowest marks, indicating that his "[p]erformance is unacceptable and shows no significant progress or improvement [and i]mprovement is critical," for the categories of maintaining good attendance, following leave policies, and reporting to work on time and leaving after the designated time. (Youngbar Dep. (DE 49-3) at 277-78). The transcript of that meeting reflects that perceived performance issues were further elaborated upon during the review. (<u>See generally</u> DE 44-4 Exhibit C at 29). Thus, it is undisputed that, from defendant's perspective, plaintiff was not meeting legitimate performance expectations.

Plaintiff's attempts to call into question the sincerity of defendant's belief are ineffectual. As already noted, plaintiff does not dispute that defendant Youngbar perceived plaintiff as suffering attendance issues. (Pl. Stmt. (DE 48) ¶ 21). Though plaintiff challenges the accuracy of the assessment, citing to the testimony of his coworkers and Craft as well as defendant Longent's employment policy, an "employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination." <u>DeJarnette</u>, 133 F.3d at 299. Plaintiff also points to other sections of the review, including in the categories of management of timelines and customer service, where he received a satisfactory rating, and he cites to evidence that defendant awarded plaintiff with two bonuses and assigned plaintiff substantial projects in the month leading up

15

to his termination. None of these points, however, refute the undisputed fact that defendant Youngbar did not believe plaintiff was meeting the company's attendance expectations. See, e.g., DeJarnette, 133 F.3d at 299 ("While the Data Processing Sheets may show that DeJarnette's packing and inspecting performance was average, they do not refute Liggon's opinion that DeJarnette had a poor attitude, lacked enthusiasm, and made poor use of her slack time."). Also relevant is the undisputed fact that plaintiff's overall rating was lower than those of other project managers.

Plaintiff's efforts to show defendant Youngbar's expectation itself was a sham similarly are ineffective. Plaintiff asserts that other employees who were identified also as having attendance issues or otherwise failing timely to submit for paid time off were not terminated. As evidence, however, plaintiff refers to defendant Youngbar's testimony under oath that all such identified employees either resigned or were terminated, including two who allegedly were terminated for attendance issues. (See Youngbar Dep. (DE 49-3) at 158). Thus, plaintiff fails to introduce evidence that these employees were treated differently than he was. Relevant to this analysis is the undisputed fact that Craft did not comply with defendant Longent's attendance and personal leave policies, and upon discussing those issues, "it was decided [he] would be better off leaving Longent and he resigned." (Pl. Stmt. (DE 43) ¶ 21; Def. Stmt. (DE 43) ¶ 23).

Plaintiff also asserts that his coworker, Wojcik, had a note on his evaluation imploring him to "[i]mprove on time arrival and time completion of tasks" and yet was not terminated and indeed, according to plaintiff, was interviewed for a promotion at the company. (Wojcik Performance Review (DE 49-5) at 3). Although this note addresses arrival time and task completion, Wojcik still received substantially higher marks in the relevant work ethic categories. (See id. at 2). Plaintiff does not cite to any evidence beyond his general allegations supporting the inference that the difference in ratings was the result of discrimination rather than perceived distinctions in the relative need for growth. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000) ("[A] plaintiff's own assertions of

discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.").

In sum, it is undisputed that plaintiff was not meeting defendant Longent's legitimate performance expectations. Plaintiff also has not brought forth sufficient evidence to create a genuine issue of material fact "reasonably calling into question the honesty of his employer's belief" that he was not meeting expectations, DeJarnette, 133 F.3d at 299, or that the evaluation "could be discredited . . . as inconsistent and contradictory." Jacobs, 780 F.3d at 575. Plaintiff's claim for discrimination pursuant to the disparate treatment theory thus fails as a matter of law.

The court considers next the failure to accommodate theory. Plaintiff alleges that defendant's motivating factor in issuing an employee improvement action form was the need to accommodate plaintiff's request for time off to celebrate Eid al-Adha. To establish a prima facie case for failure to accommodate, a plaintiff must adduce sufficient evidence that he: "(1) . . . has a bona fide religious belief or practice that conflicts with an employment requirement and (2) the need for an accommodation of that religious belief or practice served as a motivating factor in the employer's adverse employment action." Abeles v. Metro. Washington Airports Auth., 676 F. App'x 170, 176 (4th Cir. 2017).

For the reasons aforementioned, defendant's issuance of an employee improvement action form did not constitute an adverse employment action. Thus, the court must instead look to whether the need to accommodate plaintiff's religious beliefs served as a motivating factor in plaintiff's termination. Where plaintiff's termination occurred on May 10, 2019, nine months after plaintiff requested time off from work to celebrate Eid al-Adha on August 24, 2018, and where plaintiff does not cite to any evidence that the need to accommodate the religious holiday was so much as mentioned in the months leading up to his termination, no reasonable jury could find it to have been a motivating factor. Indeed, plaintiff's arguments concerning defendant Longent's

17

alleged failure to accommodate only link plaintiff's need for an accommodation to the issuance of his improvement plan and fail causally to connect it to his termination.  (See generally Pl. Mem. (DE 41)).

To conclude, plaintiff fails to demonstrate a genuine issue of material fact as to his claims for discrimination in violation of Title VII.  Defendants' motion must be granted.

        b.      Retaliation in Violation of Title VII

Plaintiff claims that defendant Longent retaliated against him after he requested a reasonable religious accommodation and complained about the employee improvement action plan by terminating him.

"To establish a prima facie case of retaliation, [a plaintiff is] obliged to show that (1) he engaged in a protected activity; (2) [defendant] took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650 (4th Cir. 2002).  "[T]emporal proximity must be very close" in order to serve in itself as "sufficient evidence of causality to establish a prima facie case."  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  "A lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation is too long to establish a causal connection by tempor[al] proximity alone."  Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021).  In the absence of temporal proximity, plaintiff must produce some "relevant evidence" permitting a reasonable inference of a causal connection, id., such as by "look[ing] to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Here, accepting for the purposes of the instant motion that both requesting an accommodation and complaining about the improvement plan are protected activities, plaintiff

fails to demonstrate a genuine issue of fact as to the third element of the prima facie case. As an initial matter, causation in this case is not established through temporal proximity alone. The record reflects that plaintiff requested the religious accommodation on August 21, 2018, and he was terminated nine months later on May 10, 2019. As for his complaints about the employee improvement action plan, the only precise date plaintiff offers is December 21, 2018, during his annual performance review. (See Altaweel Dep. (DE 44-5) at 14). Even taking the later occurring of the two activities, five months is "too long" a period "to establish a causal connection by tempor[al] proximity alone." Roberts, 998 F.3d at 127.

In addition to a lack of temporal proximity, there is no other evidence permitting a reasonable inference of a causal connection between the activities and plaintiff's termination. Indeed, the communications and other evidence in the record specifically pertaining to the time period between plaintiff's asserted protected activity and his termination are devoid of indicia of retaliatory animus. (See, e.g., Youngbar Aff (DE 44-4) Exhibit C at 29 (audio recordings of interim meetings)). Plaintiff's argument to the contrary, that he "continued both his good work for the company and his compliance with the applicable [paid time off] policies after the [plan]," (Pl's Mem. (DE 50) at 16), without more, is insufficient to create a reasonable inference that he was terminated because of his complaints and request for an accommodation months before.

Similarly, plaintiff's argument that there is ample evidence showing issuance of the improvement plan was motivated by plaintiff's request for an accommodation, and plaintiff's subsequent termination was in turn causally linked to his improvement plan, without citation to evidence from that interim period, rests on too tenuous a connection. Lovelace, 681 F.2d at 241 ("[I]t is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.").

Thus, plaintiff's claim for retaliation in violation of Title VII is dismissed.

c.       Hostile Work Environment in Violation of Title VII

"Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action."  E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008).  In contrast to other claims of disparate treatment, "[a] hostile work environment claim . . . typically encompasses conduct outside the realm of tangible employment actions."  Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751, 753–54 (1998)).  To state a claim for hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's ... [religion or national origin]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."  Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc).

"The 'severe or pervasive' element has both subjective and objective components."  Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc).  In considering whether a working environment is objectively hostile, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test."  Sunbelt Rentals, 521 F.3d at 315.  "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life."  Id.; see E.E.O.C.

20

v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").  Ultimately,

> The task . . . on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is, instances where the environment was pervaded with discriminatory conduct "aimed to humiliate, ridicule, or intimidate," thereby creating an abusive atmosphere.

Sunbelt Rentals, 521 F.3d at 316.

Here, plaintiff alleges defendant Youngbar offered him pork products on two occasions despite knowing his dietary restrictions.  (Altaweel Dep. (DE 49-7) at 4).  He avers, without mention of a specific date, that defendant Youngbar once commented that the government should not provide food stamps and health benefits to non-Americans.  (Id. at 5).  Further, when candidates with "background[s]" or "profile[s]" similar to plaintiff's were considered for employment, plaintiff alleges defendant Youngbar would "make comments in a sense that such people pretty much are not qualified other than doing, you know, the leg work or field work." (Id. at 6).  Finally, when plaintiff requested days off for Eid al-Adha, plaintiff testifies defendant mocked the idea of a holiday based on the lunar calendar, asking "what if it's cloudy," and stated, "we have holidays in this country, and those holidays aren't enough for you?"  (Id. at 6-7).   Though plaintiff still took the day off from work, it was not actually approved as paid time off until he returned to work.

These allegations are insufficient to "clear a high bar in order to satisfy the severe or pervasive test."  Sunbelt Rentals, 521 F.3d at 315.  Considered in isolation, the statements are insufficiently severe to amount to changes in the terms and conditions of employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) ("[M]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII.").  Considered together, they are insufficiently

21

pervasive to establish an objectively hostile or abusive environment.  Compare Sunbelt Rentals, Inc., 521 F.3d at 316 (finding the severe or pervasive element satisfied where plaintiff "was subject to repeated comments that disparaged both him and his faith" (emphasis added)); id. at 311 ("[T]he abusive environment was marked by a steady stream of demeaning comments and degrading actions directed against him by his coworkers." (emphasis added)); Ocheltree, 335 F.3d at 328-29 ("[Plaintiff's] male coworkers subjected her to a daily stream of discussion and conduct that was sex based or sexist." (emphasis added)).

Thus, having failed to satisfy the severe or pervasive element, plaintiff's claim for hostile work environment in violation of Title VII is dismissed.

        d.      Fraudulent Misrepresentation and Negligent Hiring, Retention, and Supervision

Plaintiff asserts defendants fraudulently promised to promote plaintiff to area manager for the Carolinas and award corresponding raises throughout his employment.  He also contends defendant Longent failed to exercise reasonable care in its supervision of defendant Youngbar.

The elements of an action for fraudulent misrepresentation in North Carolina are 1) a false representation or concealment of a material fact; 2) reasonably calculated to deceive; 3) made with the intent to deceive (scienter); 4) upon which the injured person reasonably relied to his detriment. Pearce v. American Defender Life Ins. Co., 316 N.C. 461, 343 (1986).  "A fraud claim based on a promise of a future act may succeed only where there is evidence of scienter tending to show that the promisor intended to deceive and had no intention of performing the promise at the time he made it."  Jenkins v. AKZO Noble Coatings, Inc., 35 F. App'x 79, 86 (4th Cir. 2002) (citing Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 266 (1980), overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559 (1988)).

Here, assuming such promises were made, there is no evidence that defendant Youngbar made them without the intention of fulfilling them. The mere fact that plaintiff was not promoted or granted raises is insufficient to create a plausible inference of misrepresentation. See, e.g., Jenkins, 35 F. App'x at 86.

Plaintiff argues that his treatment was consistent with a general company practice of making such promises to candidates, particularly to foreign nationals with engineering backgrounds, to lure them into accepting lower ranking roles such as that of a technician. In support, plaintiff cites to Craft's testimony.

As an initial matter, Craft did not characterize such statements as promises, but rather described them as "statement[s] of fact" about the roles that were available within defendant Longent. (Craft Dep. (DE 49-2) at 67). Further, Craft clarified under oath that such statements by him and Wojcik were "sincerely made." (Id. at 69). When asked whether such statements by defendant Youngbar were sincerely made, he stated that the only reason to believe that they were not was that he never saw a technician transition into an engineering role. (Id.). He did, however, observe pay raises and promotions within the technician category. (Id. at 70). He also testified that, other than a "pay bump" he pursued on behalf of plaintiff, he was not aware of any other foreign-born employee who experienced a delay in pay raise or promotion. (Id.).

Where plaintiff does not allege that he was a technician promised the role of an engineer, Craft's testimony alone is insufficient to establish that defendant Youngbar had no intention of promoting plaintiff or awarding him raises. Thus, plaintiff's claim for fraudulent misrepresentation is dismissed. Likewise, where plaintiff's claim for negligence is premised on his claim for fraudulent misrepresentation, it, too, is dismissed. Judgment shall be entered in defendants' favor on defendants' motion for summary judgment.

**CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment (DE 42) is GRANTED and plaintiff's motion to strike (DE 46) is DENIED.  The clerk is DIRECTED to close this case.

SO ORDERED, this the 9th day of May, 2022.

LOUISE W. FLANAGAN
United States District Judge